UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
THOMAS GESUALDI, LOUIS BISIGNANO, :
DARIN JEFFERS, MICHAEL O'TOOLE, :
MICHAEL BOURGAL, FRANK H. FINKEL, :
JOSEPH A. FERRARA, SR., MARC HERBST, : **REPORT AND**
DENISE RICHARDSON, and THOMAS : **RECOMMENDATION**
CORBETT as Trustees and fiduciaries of the Local :
282 Pension Trust Fund, : 19-CV-1181 (RRM) (PK)
:
               Plaintiffs, :
:
      -against- :
:
DOVE MASON SUPPLY CO., INC. and JOHN :
DOE CORPORATIONS 1 THROUGH 10, all :
whose true names are unknown, constituting :
members of a controlled group of corporations or :
business entities or trades or businesses under :
common control with DOVE MASON SUPPLY :
CO., INC., :
:
               Defendants. :
------------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

      Thomas Gesualdi, Louis Bisignano, Darin Jeffers, Michael O'Toole, Michael Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson, and Thomas Corbett (together, "Plaintiffs"), as Trustees and fiduciaries of the Local 282 Pension Trust Fund, bring this action against Dove Mason Supply Co., Inc. ("Defendant"),[1] alleging violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381, *et seq.* ("MPPAA"). (*See* Compl. ¶ 1, Dkt. 1.)

---

[1] John Doe Corporations were also named as defendants, but they were not included in the Motion for Default Judgment. (Plaintiffs' Memorandum of Law Supporting Default Judgment Motion, Dkt. 14.)

1

Before the Court on referral from the Honorable Roslynn R. Mauskopf is Plaintiffs' Motion for Default Judgment (the "Motion"). (Dkt. 11.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## FACTUAL BACKGROUND

The following facts are taken from the Complaint, unless otherwise stated, and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The 282 Pension Trust Fund ("Trust Fund") is an employee benefit plan and a multiemployer plan jointly administered by a Board of Trustees made up of an equal number of labor and management representatives. (Compl. ¶¶ 8-9.) Plaintiffs are Trustees and fiduciaries of the Trust Fund with discretion and control over the assets and administration of the Trust Fund. (Compl. ¶ 7.)

The Trust Fund was established through collective bargaining agreements ("CBAs") between Building Material Teamsters Local 282, IBT, a labor organization, and multiple employers, including Defendant, a company engaged in trucking work. (Compl. ¶¶ 10, 14, 16.) The Trust Fund provides pension, health and welfare, annuity, job training, vacation and sick leave, and legal services benefits to covered workers, retirees, and their dependents. (Compl. ¶ 11.)

The Trust Fund is administered by a Pension Plan and governed by an Amended and Restated Agreement and Declaration of Trust, effective September 24, 2012 ("Trust Agreement"). (Ex. A to Declaration of Mario Bulding ("Bulding Decl."), Trust Agreement, Dkt. 13-1 at 46.) The Trust Agreement sets forth requirements for collecting and receiving employer contributions to the Trust Fund, as well as an employer's liability for withdrawing from the Pension Plan. (Bulding Decl. at Articles III, IX, and XI; Compl. ¶ 11.) The Trust Agreement requires employers to submit monthly contribution payments, along with detailed written "remittance reports," to the Trustees. (Bulding Decl. at Article IX § 1(c); *see also* Compl. ¶¶ 23-24.) These signed and certified reports

2

identify the drivers who performed work covered by the CBAs and state the number of hours of covered work. They serve as the employer's monthly statement and allow the Trustees to determine the level of benefits, if any, to be provided to the employer's drivers. (Bulding Decl. at Article IX § 1(c))

Pursuant to the Trust Agreement, an employer's failure to make a contribution results in liability for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month from the first day of the month when the payment was due up to and including the date of payment; (iii) attorneys' fees and costs; and (iv) the greater of either (a) interest on the unpaid contributions, or (b) liquidated damages in the form of 20% of the unpaid contributions. (*Id.* at Article IX § 3.) The Trustees are authorized to bring actions to enforce an employer's obligations to the Trust Fund. (*Id.* at Article IX § 4.) The Trust Agreement establishes withdrawal liability if an employer either partially or completely withdraws from the Pension Plan after April 28, 1980. (*Id.* at Article XI § 1(a))

The CBA entered into by Plaintiffs and Defendant, effective October 3, 2012, fully incorporates the Trust Agreement and deems both Plaintiffs and Defendant as parties to the Trust Agreement. (Ex. B. to Bulding Decl., CBA §§ 18(g), 43, Dkt. 13-2 at 12, 19.) Section 18(b) of the CBA requires employers to contribute a specific amount of money to the Trust Fund for each covered hour an employee works under the agreement.

Defendant's last payment to the Trust Fund was on May 28, 2013. (Compl. ¶ 26.) On May 31, 2013, Defendant ceased operations covered by the Trust Agreement and CBA. (*Id.* at ¶ 30.) Such cessation of contributions and covered operations constituted a "complete withdrawal" from the Trust Fund. (*Id.* at ¶ 31.) Defendant submitted its last remittance report on February 25, 2014. (*Id.* at ¶ 25.) According to the New York State Division of Corporations website, Defendant dissolved on May 27, 2014. (*Id.* at ¶ 3.)

3

On February 2, 2016, the Board of Trustees sent Defendant an Initial Notice of Actual Withdrawal. (*Id.* at ¶ 32.) On February 23, 2016, the Board of Trustees sent Defendant a Notice and Demand for Payment of Withdrawal Liability ("Notice and Demand"), indicating that Defendant's withdrawal liability was $114,340.00. (Compl. ¶ 34; Ex. D to Bulding Decl., Notice and Demand, Dkt. 13-4.) The Notice and Demand included a payment schedule of 82 monthly payments of $1,714.03, beginning April 1, 2016, plus a final payment of $202.55. (*Id.*)

Defendant made no payment by April 1, 2016. (Compl. ¶ 35.) On April 8, 2016, the Board of Trustees sent Defendant a Withdrawal Liability Notice of Default ("Notice of Default"), demanding cure within 60 days. (Compl. ¶ 36; Ex. E to Bulding Decl., Notice of Default, Dkt. 13-5.) To date, Defendant has failed to make any payments. (Compl. ¶ 37; Bulding Decl. ¶ 13.)

## PROCEDURAL BACKGROUND

The Complaint was filed on February 28, 2019 (Dkt. 1) and served on Defendant via the Office of the Secretary of State of New York on March 11, 2019. (Aff. of Service, Dkt. 7.) No answer was filed, and Plaintiffs requested a Certificate of Default, which was entered on April 15, 2019. (Dkts. 8, 9.) The Motion was filed on May 24, 2019.

## DISCUSSION

### I.  Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Id* at 128; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ.

P. 55(a). Then, the plaintiff may "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Here, Defendant failed to answer or otherwise defend in this action.

A default "constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers,* 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citations omitted). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne*, 696 F. Supp. 2d at 208. The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-26, 133; (2) plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel*, 577 F.3d 79, 84. The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages. *See GuideOne*, 696 F. Supp. 2d at 208; *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis*, 645 F.3d at 129.

## II.   Jurisdictional and Procedural Requirements

### a. Jurisdiction

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). The court may also inquire as to whether it has personal jurisdiction. *See Mickalis*, 645 F.3d at 133; *see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

5

Plaintiffs allege violations of ERISA, 29 U.S.C. §§ 1001, *et seq.* In addition, Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185, *et seq.* ("LMRA") permits "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce" to "be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988). Federal question jurisdiction is therefore proper under 28 U.S.C. §§ 1331.

This Court has personal jurisdiction over Defendant because Defendant is a New York corporation with its principal place of business within the Eastern District of New York. (Compl. ¶ 6.) *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

b. Service

The Summons and Complaint must be properly served on the defaulting party. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-cv-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Plaintiffs have shown proper service of the Summons and Complaint on Defendant by filing a process server's Affidavit of Service Through the Secretary of State pursuant to § 306 of the New York Business Corporation Law. (Dkt. 7.) *See Old Republic Ins. Co. v. Pac. Fin. Servs. of America, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

c. Procedural Requirements

Plaintiffs have taken the required procedural steps to provide proper notice to Defendant. They requested a Certificate of Default, which was entered by the Clerk of the Court, and they notified Defendant of the status of this action by mailing Defendant the Motion papers (Dkts. 8, 9, 15.)

6

### III. Liability

When determining liability, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of Plaintiffs. *See Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

ERISA empowers civil actions by participants and beneficiaries of an "Employee Benefit Plan" to seek relief for violations of, or to enforce provisions of, such plan. *See* ERISA § 1001. The ERISA defines a qualifying "Employee Benefit Plan" as "[A]n employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." ERISA § 3(3). ERISA § 3(37) defines a qualifying "Multi-Employer Plan" as a plan "(i) to which more than one employer is required to contribute, and (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer." The Trust Fund qualifies as both an "employee benefit plan" and a "multi-employer plan." (*See* Compl. ¶ 8.)

ERISA § 4219(b)(1) obliges plan sponsors to take specific action in the event of an employer withdrawal:

> As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—
> (A) notify the employer of—
> (i) the amount of the liability, and
> (ii) the schedule for liability payments, and
> (B) demand payment in accordance with the schedule.

Here, Plaintiffs notified Defendant of the amount of its withdrawal liability and set out a payment schedule in the Notice and Demand, pursuant to which the initial payment was due by April 1, 2016. Defendant did not make that payment. (Compl. ¶ 35.) Upon a failure to make such payment, ERISA § 4219(c)(5)(A) permits a beneficiary to require "immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total

7

outstanding liability from the due date of the first payment which was not timely made." Plaintiffs did so by sending the Notice of Default on April 8, 2016 demanding immediate payment. (*Id.* at ¶ 36.)

ERISA § 1401(a)(1) sets out a requirement that "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."

ERISA § 4219(b)(2) permits an employer receiving notice of withdrawal liability to contest the withdrawal liability and schedule of payments as follows:

> (A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer—
> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
> (iii) may furnish any additional relevant information to the plan sponsor.

To date, Defendant has not made any payment, initiated arbitration, or challenged Plaintiffs' allegation or calculations of its withdrawal liability. (Compl. ¶ 40; Bulding Decl. ¶ 13.)

**IV.    Damages**

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. On a Motion for Default Judgment, Plaintiffs bear the burden of presenting proof of damages. *See CIT Bank v. Dambra*, No. 14-CV-3951 (SLT)(VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015), *R&R adopted*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015). To reach a conclusion as to damages, the court may rely on documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded,

8

if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

    a. <u>Withdrawal Liability</u>

Pursuant to ERISA § 4201(a), "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988) ("The purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" (quoting House Report at 67, 1980 U.S. Code Cong. & Ad. News at 2935)).

Plaintiffs submitted a Report on Employer Withdrawal Liability (the "Report"), which contained calculations of Defendant's withdrawal liability. These calculations were completed under the supervision of an actuary and based on the statutory formula provided in the MPPAA. (Ex. C to Bulding Decl., Report at 1, Dkt. 13-3). Using Defendant's withdrawal date of May 31, 2013 and its total contributions for the five-year period ending February 28 or 29, the Report determined Defendant's net withdrawal liability to be $114,340.00. (Report at 7; Compl. ¶ 61.) Plaintiffs also submitted a sworn declaration of the Trust Fund's administrator that Defendant has failed to make any withdrawal liability payments or challenge the amount of Plaintiffs' assessment via arbitration. (Bulding Decl. ¶¶ 13, 17.)

The undersigned finds the Report and administrator's declaration sufficient to determine damages for withdrawal liability and respectfully recommends that Plaintiffs be awarded $114,340.00.

b. <u>Interest</u>

In accordance with ERISA § 502(g)(2)(B), interest must be awarded on a judgment for unpaid contributions. *See Benson v. Brower's Moving & Storage, Inc.*, 726 F. Supp. 31, 36 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 310 (2d Cir. 1990) ("There is no question that Section 502(g)'s remedies are *mandatory*."). Pursuant to Article XI § 5(d)(2) of the Trust Agreement, interest on any amount in default is calculated at a rate of 1 ½ percent per month from the date payment is due to the date it is paid. Plaintiffs calculated $62,814.95 in interest due on the withdrawal liability from April 1, 2016 through April 18, 2019 (the date of its last calculation). (Declaration of Christopher Smith ("Smith Decl.") ¶ 15, Dkt. 12.) Plaintiffs seek an additional $54.93 per day from April 19, 2019 up to and including the date judgment is entered. (*Id.*) The undersigned respectfully recommends that Plaintiffs be awarded interest on the withdrawal liability in the amount of $62,814.95, plus $54.93 per day from April 19, 2019, up to and including the date judgment is entered.

c. <u>Liquidated Damages</u>

Plaintiffs seek $62,814.95 in liquidated damages through April 18, 2019, plus $54.93 per day in additional liquidated damages from April 19, 2019 up to and including the date judgment is entered. (Plaintiffs' Memorandum of Law Supporting Default Judgment Motion at 8, Dkt 14.) In accordance with Article XI § 5(e) of the Trust Agreement and ERISA § 502(g)(2)(C), if judgment is awarded on an action seeking withdrawal liability, the Trustees are entitled to liquidated damages equal to the greater of the amount of interest charged on the unpaid balance, or 20 percent of the unpaid amount awarded. Because the amount of interest is greater than 20% of the $114,340.00 withdrawal liability, the undersigned respectfully recommends that Plaintiffs be awarded liquidated damages on the withdrawal liability equal to the interest amount, *i.e.*, $62,814.95, plus an additional $54.93 per day from April 19, 2019 up to and including the date judgment is entered.

      d.   <u>Attorneys' Fees</u>

Pursuant to Article XI § 5(e) of the Trust Agreement and ERISA § 4301(g)(2)(G), in the event of a successful action seeking withdrawal liability, the employer shall pay attorneys' fees and all costs incurred in the action. Plaintiffs seek $8,484.00 in attorneys' fees and $803.02 in costs. (Smith Decl. ¶ 20.) Plaintiffs are required to provide contemporaneous time sheets. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986). They have done so. (*See* Ex. D to Smith Decl., Dkt. 12-4.)

The attorneys' fees and costs awarded to Plaintiffs by the Court must be "reasonable." *See Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015). "[T]he lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee." *Millea v. Metro-N. R.R.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Scharff v. Cty. of Nassau*, No. 10-CV-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016); *Riley*, 2015 WL 9592518, at *1. To calculate the lodestar, the Court determines a reasonable hourly rate and a reasonable number of hours. "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006). The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates. *See Riley*, 2015 WL 9592518, at *1-2.

      i.   Hourly Rate

To determine a reasonable hourly rate, the district court considers "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994). The "community" is the district in which the reviewing court sits. *Scharff*, 2016 WL 3166848, at *4. "The reasonable hourly rate is the rate a paying client would be willing to pay…bear[ing] in mind that a reasonable, paying client

11

wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The district court must also "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190. Those factors include the attorney's experience and expertise. *See Brady*, 455 F. Supp. 2d at 204; *Zhiwen Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). The fee applicant has the burden of justifying the requested rate as reasonable. *See Scharff*, 2016 WL 3166848, at \*4.

Attorneys' fees in an ERISA matter were recently awarded in this District at the hourly rate of $400 for partners, $375 for senior associates, $275 for junior associates, and $110 for paralegals. *See Gesualdi v. Scara-Mix, Inc.*, No. 14-CV-0765 (JS)(AKT), 2017 WL 5564673, at \*9 (E.D.N.Y. Nov. 17, 2017). ERISA default matters are awarded attorneys' fees at the lower end of the range due to their "relative simplicity." *See Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 104 (E.D.N.Y. 2015).

Plaintiffs were represented in this action by attorneys Arthur Muller and Christopher Smith, with the assistance of paralegals Michelle Salerno and Anna Chiarolanza. (Smith Decl. ¶ 18.) Plaintiffs seek an hourly rate of $410.00 for Muller, $450.00 for Smith, $120.00 for Salerno, and $120.00 for Chiarolanza. (*Id.*)

Muller is a 2015, *magna cum laude* graduate of Pace University School of Law. (*Id.* at ¶ 19.) In 2017, an hourly rate of $275 was approved for Muller. *See Scara-Mix, Inc.*, 2017 WL 5564673, at \*9. In light of the uncomplicated nature of this action and the recent rate set in this District, the undersigned respectfully recommends that the hourly rate of $275 be approved for Muller.

Smith is a graduate of Pace University School of Law and has over twenty years of experience. (Smith Decl. ¶ 19.) An hourly rate of $400 was previously approved for Smith. *See*

12

*Scara-Mix, Inc.*, 2017 WL 5564673, at *9. The undersigned respectfully recommends that the hourly rate of $400 be approved for Smith.

Salerno is a graduate of St. John's University and has twenty years of litigation experience, ten of which specialized in ERISA. (Smith Decl. ¶ 19.) An hourly rate of $110 was previously approved for Salerno. *See Scara-Mix, Inc.*, 2017 WL 5564673, at *9. Plaintiffs provided no information regarding Chiarolanza's credentials or experience, but the hourly rate of $90 was previously approved for Chiarolanza. *Id.* The undersigned therefore respectfully recommends approving an hourly rate of $110 for Salerno and an hourly rate of $90 for Chiarolanza.

        ii.    Hours Billed

"[T]he district court should exclude excessive, redundant or otherwise unnecessary hours…." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Smith billed a total of 16.10 hours on the matter and Muller billed a total of 2.10 hours. (Ex. D to Smith Decl., Detail Fee Transaction File List at 2, 3, Dkt. 12-4.) Salerno billed a total of 1.50 hours on the matter and Chiarolanza billed a total of 1.65 hours. (*Id.* at 3.) These billed hours are not excessive, redundant, or unnecessary. The presumptively reasonable fee is therefore $7,331.00.[2] The undersigned respectfully recommends this award.

    e.  Costs

Plaintiffs seek an award of $803.03 in costs. (Smith Decl. ¶ 20.) This amount consists of the filing fee ($400.00), service of process ($365.00), and mailing costs ($38.03). (Ex. D to Smith Decl., Detail Cost Transaction File List, Dkt. 12-4.) The undersigned finds the fee for service of process on a single defendant via the NY Secretary of State to be inordinately high. While the Trust Agreement explicitly provides that Plaintiffs may recover costs related to any suit to collect withdrawal liability (Sec. 5(e)(2)), these costs must be reasonable. Without support for this high

---

[2] $400 x 16.1 hours (Smith); $275 x 2.10 hours (Muller); $90 x 1.65 hours (Chiarolanza); and $110 x 1.5 hours (Salerno).

13

number, the undersigned finds that service of process via the NY Secretary of State should not exceed $100. Accordingly, the undersigned respectfully recommends that costs for service of process be reduced to $100 and a total amount of $538.03 in costs be awarded to Plaintiffs.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment be granted and that the Court award Plaintiffs:

(1) $114,340.00 in withdrawal liability;

(2) $62,814.95 in interest, plus $54.93 in additional interest per day from April 19, 2019 up to and including the date of judgment;

(3) $62,814.95 in liquidated damages, plus $54.93 in additional liquidated damages per day from April 19, 2019 up to and including the date of judgment;

(4) $7,331.00 in attorneys' fees;

(5) and $538.03 in costs.

Plaintiffs are directed to serve this Report and Recommendation on Defendant forthwith and file proof of service on the docket by March 16, 2020.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         March 11, 2020